TERESA H. HICKEY, Appellant, *v.* JOHN H. MORRELL, Respondent.

In an action to recover damages for alleged false representations, by which plaintiff was induced to deliver to defendant certain property, to be stored in the warehouse of the latter, in the city of New York, it appeared that the representations complained of were contained in a circular issued by defendant recommending his warehouse for storage purposes. The circular stated that in the erection of the warehouse " no expense has been spared in supplying * * * protection against the spread of fire, the exterior being fire-proof, and the interior being divided by heavy brick walls, iron doors and railngs." By the act of 1874 (§ 5, chap. 547, Laws of 1874) relating to buildings in said city, it is provided that buildings like the defendant's warehouse " shall have doors, blinds and shutters made of fire-proof metal, on every window and opening above the first story." It appeared on the trial that the window frames of the warehouse were of wood, and there were no outside shutters to the windows. The wooden window frames caught fire from a fire which originated in another building, by which the warehouse and plaintiff's property therein were destroyed. Expert testimony was given to the effect that a building so constructed could not be considered fire-proof, and that it was practicable to construct a storage warehouse which would be fire-proof. Plaintiff was nonsuited, on the ground that the statement as to the character of the exterior of the building was a mere statement of opinion. *Held* error; that the statement was of a fact, not an opinion; that it necessarily referred to the quality of the material of which the exterior was constructed or which formed its exposed surface, and excluded the idea that it was of wood.

*Walker* v. *Milner* (4 F. & F. 745), *Prideaux* v. *Bunnett* (1 C. B. [N. S.] 613), *Jendwine* v. *Slade* (2 Esp. 572), *Gordon* v. *Butler* (105 U. S. 553), distinguished.

*It seems* the rule that no man is liable for the expression of his opinion is true only when the opinion stands by itself, and is intended to be taken as distinct from any thing else.

(Argued April 26, 1886; decided June 1, 1886.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made June 30, 1884, which affirmed a judgment in favor of defendant, entered upon an order dismissing the complaint on trial. (Reported below, 12 Daly, 482.)

The nature of the action and the material facts are stated in the opinion.

*Matthew Hale* for appellant. When, from the circumstances shown, inferences are to be drawn which are not certain and incontrovertible, and may be differently made by different minds, it is for the jury to make them. In such case it is error to withdraw the case from the jury. (*Powell* v. *Powell*, 71 N. Y. 71; *Hart* v. *H. R. Bridge Co.*, 80 id. 622; *Ochsenbein* v. *Shapley*, 85 id. 215, 224; *Cook* v. *N. Y. C. R. R. Co.*, 1 Abb. Dec. 432; *Morrell* v. *Morrell*, 17 Hun, 324; *Fire Dept.* v. *Harrison*, 2 Hilt. 455.) A case of deceit was fully proved. The representations were of fact. (*Simar* v. *Canaday*, 53 N. Y. 289, 306; *Chrysler* v. *Canaday*, 90 id. 272; *Hubbard* v. *Briggs*, 31 id. 578; *Cole* v. *Cassidy*, 138 Mass. 437; *Taylor* v. *Guest*, 58 N. Y. 262; *Indianapolis R. Co.* v. *Tyng*, 63 id. 653; *Drake* v. *Grant*, 36 Hun, 464; *Yates* v. *Alden*, 31 Barb. 172.) Defendant must be presumed to know the condition of his own building, of which he had charge himself. He is also presumed to know the law which required the windows above the first story to be protected by doors, blinds or shutters of some fire-proof metal. (1 Kent's Com. 460; *Bennett* v. *Judson*, 21 N. Y. 238; *Ind., etc., R. R. Co.* v. *Tyng*, 2 Hun, 318, 321, 322; affirmed, 63 N. Y. 653, 655; *Bennett* v. *Judson*, id. 655; 2 Hun, 320; *Meyer* v. *Amidon*, 23 id. 553; *Yates* v. *Alden*, 41 Barb. 172, 180, 181; *Litchfield* v. *Hutchinson*, 117 Mass. 195, 197–8.) The representations were made with intent to deceive. (*Rohrschneider* v. *Knickerbocker L. I. Co.*, 76 N. Y. 216.) The nonsuit cannot be sustained upon the ground that the plaintiff did not avail herself of the means of knowledge which were at hand and equally available to both parties. (Cooley on Torts, 490; *Mead* v. *Bunn*, 32 N. Y. 275; *Albany City Sav'g Inst.* v. *Burdick*, 87 id. 40, 49.) Every person violating an express statute is a wrong-doer, and every person injured by the act or omission which constitutes the violation is entitled to a civil remedy. (Laws of 1871, chap. 742, § 8; *Juter* v. *N. Y. and H. R. R. Co.*, 2 Abb. Dec. 458, 464; *Beisegel* v. *N. Y. C. R. R. Co.*, 14 Abb. [N. S.] 29; *Marrotte* v *D. & H. C. Co.*, 64 N. Y. 524, 532.) The court is bound to take judicial

notice of public statutes. (*Burnham* v. *Acton*, 7 Rob. 395, 398.) It was the duty of the court below to give the plaintiff the benefit of any cause of action established by the evidence, and this court on appeal will consider the case upon the cause of action disclosed by the evidence, and disregard any objection to the sufficiency of the pleadings not made below. (*Knapp* v. *Simon*, 96 N. Y. 284, 392.) The court erred in sustaining the objection to the question whether the plaintiff would have stored her property with defendant if she had not believed the statement in the circular. (*Bruce* v. *Burr*, 67 N. Y. 237, 241; *Hardt* v. *Shulting*, 13 Hun, 537; *Thurston* v. *Cornell*, 38 N. Y. 281; *McKown* v. *Hunter*, 30 id. 625.)

*John M. Bowers* for respondent. No man is liable for the expression of his opinion or judgment. (Kerr on Frauds, 83; *Smith* v. *Countryman*, 30 N. Y. 681; Kent's Com. 486; *Walker* v. *Milner*, 4 F. & F. 745; *Prideaux* v. *Bennett*, 1 C. B. [N. S.] 613; *Jendwine* v. *Slade*, 2 Esp. N. P. 572; *Power* v. *Burnham*, 4 Ad. & El. 476, 477; *Taylor* v. *Bullin*, 5 Exch. 779; *Gordon* v. *Butler*, 105 U. S. 553; *Holbrook* v. *Connor*, 60 Me. 578; *Kernodle* v. *Hunt*, 4 Black, 57; *Miller* v. *Young*, 33 Ill. 354.) To maintain this action plaintiff had to show: A false statement as to a fact; that it was made with knowledge as to its falseness; that the statement was made with intent to deceive; that the plaintiff acted in reliance upon such statement; that the representation was made concerning a fact not open to the perception of a person of ordinary intelligence, or concerning a fact as to which the two parties had not equal knowledge or equal means of acquiring information. (*Marsh* v. *Falker*, 40 N. Y. 562, 567, 574; *Haycraft* v. *Creasy*, 2 East, 92.) The plaintiff must have stored her goods upon the reliance of the statement made, in order to be allowed any standing in court. (*Taylor* v. *Guest*, 58 N. Y. 262.) Where a matter is equally open to the inspection of both parties, the defendant is not to be held liable for any representations he makes as to matters open to the perception of an ordinary individual. (*Long* v. *Warren*, 68 N. Y. 426, 481; *Slaughters*

v. *Gerson*, 13 Wall. 379, 383; *Vanderwalker* v. *Osmer*, 65 Barb. 556; *Port* v. *Williams*, 6 Ind. 219; *Van Epps* v. *Harrison*, 5 Hill, 63; *Rockefellow* v. *Baker*, 5 Wright, 41; 1 Penn. St. 319; *Hecker's Warrantee Cases*, 236; *Knowlton* v. *Atl. & R. R. Co.*, 38 Me. 55.) The defendant was a warehouseman, and in receiving the goods he received them on a contract for mutual benefit, and was liable only to ordinary diligence. He was bound only for ordinary care, was not liable for loss arising from accident when he was not in default, and he is not in default when he exercises common diligence. (2 Pars. on Cont. 617; 2 Kent's Com. 566; Jones on Bailm., § 7; Angell on Car., § 45; Edw. on Bailm., § 284; *Platt* v. *Hibbard*, 7 Cow. 497; *Knapp* v. *Curtis*, 9 Wend. 60.) Before the evidence is left to the jury, the court is to decide not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it upon whom the burden of proof is imposed. (*Commissioner* v. *Clark*, 94 U. S. 278–284, *Pleasants* v. *Fauts*, 22 Wall. 116, 120; *Lomer* v. *Meeker*, 25 N. Y. 361; *Robinson* v. *McManus*, 4 Lans. 380, 386; *Fish* v. *Davis*, 62 Barb. 122; *Appleby* v. *Astor F. Ins. Co.*, 54 N. Y. 253, 261.)

DANFORTH, J. As to the character of this action the parties are agreed. It is for " falsely and fraudulently " and " with intent to deceive and defraud the plaintiff," representing, among other things that the defendant's warehouse was " fire-proof on the exterior," whereby the plaintiff was induced to deliver to him to be stored therein, certain property of value, which while there was destroyed by fire communicated from the outside " to the wooden cornice and wooden window frames " of the warehouse and thence to the property in question.

The answer admitted that defendant was proprietor of the warehouse; that it and the articles described in the complaint were destroyed by fire, but denied the other matters above referred to as making out a cause of action, and set up that " the property was received and stored by him as a warehouseman, and in no other capacity, and under the special contract that the

goods were stored at the owner's risk of fire." There was no controversy as to the evidence. The question was determined upon that introduced by the plaintiff and in view of the law as it stood at the time of the bailment. The appellant refers to the statute (Laws of 1871, chap. 742, § 8), " in relation to storage and other purposes "; imposing liabilities upon persons for any fire resulting from their willful and culpable negligence, and which among other things requires "the closing of iron shutters " at the completion of the business of each day, by the occupant of the building having use or control of the same. But the complaint contains no allegation of negligence, and so the action could not stand on that ground either at common law or by statute. Another statute also referred to, relating to buildings in the city of New York (Laws of 1874, chap. 547, § 5), is of some importance in its bearing upon the point chiefly pressed upon us, and as likely to have been in contemplation of both parties. It is there provided that buildings of a certain description — within which the storehouse in question comes — shall have doors and blinds and shutters made of fire-proof metal on every window and opening above the first story." The plaintiff's testimony went to show that she was induced to store her goods with the defendant by representations contained in a circular issued by him, the object of which, as therein stated, was to call " the special attention of persons having valuable articles, merchandise, or other property for storage, to his new first-class storage warehouse, in the erection of which," it said, among other things, " no expense has been spared in supplying light, ventilation and protection against the spread of fire, the exterior being fire-proof, and the interior being divided off by heavy brick walls, iron doors, and railings appropriate and convenient in every way for the various kinds of articles to be stored." The learned counsel for the respondent argues that the only statements of fact in the paragraph quoted, are those which relate to the interior as divided by heavy brick walls, iron doors and railings; that as to those, the defendant had knowledge, and concedes that their non-existence would make him guilty of a misrepresentation. This is a very narrow view of

the subject, and could prevail, if at all, only by conceding that the defendant purposely avoided mention of those things which if stated would make his solicitations less attractive, and display him as the owner of a building combustible on the outside, and so of little security to its contents, if they happened to be of the same character.

We think the appellant's ground of complaint a just one. It was proven that in fact the window frames in the warehouse were of wood ; that at the outside of the windows there were no shutters ; that the cornices were of wood covered with tin. The fire occurred in the evening. It originated in other buildings across the street, and from them communicated to the wooden window frames on the defendant's building. An architect and a builder, examined as experts, testified that a building constructed as was the one in question, " with wooden window frames and sashes, and no outside shutters," could not be deemed fire-proof, and that in October, 1881, it was practical to erect a storage warehouse which would be fire-proof on the exterior. At the close of the plaintiff's evidence she was nonsuited upon the ground that the statement in the circular as to the character of the exterior of the building, was a mere expression of an opinion, and not the statement of a fact. Upon the same ground the judgment was affirmed at the General Term. In such a circular, obviously intended as an advertisement, high coloring and exaggeration as to the advantages offered, must be expected and allowed for, but when the author descends to matters of description and affirmation, no misstatement of any material fact can be permitted, except at the risk of making compensation to whomever, in reliance upon it, suffers injury. Here the allegation is that the exterior of the building is fire-proof. It necessarily refers to the quality of the material out of which it is constructed, or which forms its exposed surface. To say of any article it is fire-proof conveys no other idea than that the material out of which it is formed is incombustible. That statement, as regards certain well-known substances usually employed in the construction of buildings, while it might in some final sense be deemed the ex-

pression of an opinion, could in practical affairs be properly regarded only as a representation of a fact. To say of a building that it is fire-proof excludes the idea that it is of wood, and necessarily implies that it is of some substance fitted for the erection of fire-proof buildings. To say of a certain portion of a building it is fire-proof suggests a comparison between that portion and other parts of the building, not so characterized, and warrants the conclusion that it is of a different material. In regard to such a matter of common knowledge, the statement is more than the expression of opinion; no one would have any reason to suspect that any two persons could differ in regard to it. But when we look at the words accompanying this statement, viz.: "No expense has been spared in supplying protection against the spread of fire," all possibility of doubt seems removed. This danger is pointed out as the one thing which, more than another, the owner had in view, and guarded against, and the rest of the sentence shows with what result, viz., "the exterior being fire-proof," and the interior divided off by heavy brick walls, iron doors and railings. Thus the expenditure of money is said to have been limited only by the accomplishment of the desired object, and the statement of the material used is in connection with the representation as to the quality of the exterior. No one reading of inside walls and railings of incombustible material, and of an exterior fire-proof, could suppose that a precaution against fire, made necessary by statute, had been omitted, or that a builder who called attention to such matters as an inducement to patronage, could have regarded wooden window frames as in any sense fire-proof. The language of the circular is very emphatic. In effect it says the buildings, as a whole, have been erected at an immense cost, from which assertion alone, in view of the business to which they were devoted, one would expect strength and adaptation of materials and skill in construction, affording security at least against all the ordinary dangers to which property might be exposed when put in store; but this general statement is followed by the declaration that no expense has been spared in supplying " protection against the spread of

fire," and this assurance is made prominent by the display of capital letters, and justified by the explanation which relates to an existing state of things, viz., " the exterior being fire-proof," and still further emphasized by the more moderate and qualified statement as to the interior; that is not said to be fire-proof, but only "'divided off by heavy brick walls and iron doors and railings," describing at the same time its arrangement and the substance of its walls and partitions.  As to this, therefore, the statement would be true, although the floors, lintels, stairs, landings, ties, joists, ceilings and other parts were of wood, but no such discrimination is suggested as to the exterior.  The strength of the walls might indeed be impaired by the necessary openings for doors and windows, but for the purpose of preventing mischief by fire, or as the defendant put it, "the spread of fire," the exterior is pronounced fire-proof.  Had he only said of the exterior as he did of the interior — the wall is of brick — the intending customer would have been put to an inquiry as to the window frames and doors.  He said much more.  We think, therefore, that the defendant must be regarded as stating a fact and not as expressing a mere opinion, when he described the exterior — that is the whole exterior — of his buildings as fire-proof.  Such statement is not to be classed with those relating to value, or prospective profits, or prospects of business, or assertions in regard to a speculative matter, concerning any of which men may differ.  It relates to something accomplished, to an existing fact as distinguished from one yet to come into existence, it was made after calling to mind the use to which the buildings were to be put, the fact that the attention of the builder had been especially directed to " protection against the spread of fire," which could be effected only by the use of proper materials, and the statement was made with knowledge that such materials had not been used.

Nor is it like the safe case cited by the respondent. ( *Walker* v. *Milner*, 4 Fost. & F. 745.)  There the action was upon a warranty that " the safe in question was thief proof," "that nothing can break into it."  It was broken into.  There was

no suggestion of fraud or deceit, and the jury were required to discriminate between what was represented and what was warranted, and unless satisfied there was a warranty, to find for the defendant. The safe-maker's prospectus was put in evidence; it stated that the safes would insure the safety of valuable property contained in them. The court said : " The words cited from the circular could hardly be understood in the sense of a warranty or assurance of perfect safety, but only as importing a representation of a high degree of strength." They were promissory merely. Then plaintiff's counsel referred to a later prospectus in which the safes in question were only spoken of " as of the strongest security," and relied on this as implying a withdrawal of the previous warranty.

But COCKBURN, J., observed that, " Assuming later prospectuses to have been issued after the burglary, it was only dictated by common honesty. For, after it had been found by actual experience that the safe was not absolutely secure against all possible attempts, it would have been fraudulent to continue previous description."

In the case at bar the plaintiff alleges fraud. A jury might find that an exterior of a city building, partly of wood, although to no greater extent than the one in question, was not fire-proof within the meaning and intent of the circular; they might also find that when the circular was issued, this fact was known to the defendant, and then the doctrine, suggested by COCKBURN, J., in the case cited, would have some application. Nor do the other cases referred to seem to support respondent's contention. They exclude the idea of fraud, and relate to matters of mere opinion. As, whether a certain valve will consume smoke and save fuel ? (*Prideaux* v. *Bunnett*, 1 C. B. [N. S.] 613.) Whether certain pictures were the work of the old masters, or copies ? (*Jendwine* v. *Slade*, 2 Esp. 572.) Whether land was of the value certified to ? (*Gordon* v. *Butler*, 105 U. S. 553.) But in none of them is it denied that if the person making the statement or expressing the opinion had at the time knowledge of its falsity, the action would lie.

It is certainly well settled upon principles of natural justice that for every fraud or deceit which results in consequential damage to a party, he may have an action.    Here the complaint states not only a false representation with a fraudulent intent, but that the falsehood was conscious and willful; that by it the plaintiff was induced to deliver her property to be stored in the building and thereby incurred loss.    The evidence may be so viewed as to sustain these allegations.

The learned counsel for the respondent has stated in the broadest and most unqualified terms, as a proposition not to be disputed, "that no man is liable for the expression of his opinion or judgment."    But this is true only when the opinion stands by itself and is intended to be taken as distinct from any thing else, and where the proposition is found in the books it is so restricted.    Thus it is said : " Matters of opinion, stated merely as such, will not in general form the ground to a legal charge of fraud " (Leake on Contracts, 355), giving many instances and also exceptions to the rule.  Statements of value have been held insufficient to sustain an action where, as is said, they were " mere matters of opinion " (*Simar* v. *Canady*, 53 N. Y. 298, 306), but at the same time it is shown that under certain circumstances they are to be regarded as affirmations of fact, and then if false an action can be maintained upon them.  The same rule applies where A. desiring credit of B. for a certain amount, the latter asks C. as to the solvency of A. and he replies, " he is good, as good as any man in the country for that sum."   No doubt this involves opinion, but it is held that if the recommendation was made in bad faith and with knowledge that A. was insolvent, C. would be liable (*Upton* v. *Vail*, 6 I. R. 181) ; and so as to every representation concerning a matter of fact by which one man is induced to change his position to his injury or the benefit of another.  It may be so expressed as to bind the person making it to its truth whether it take the form of an opinion or not, or it may appear that it was not intended to be acted upon.   In the latter case no obligation is incurred.

In the circular issued by the defendant there are many

words of commendation, which, however strong, could not be relied upon as the basis of contract. The ones at first referred to are not of that character. They relate to the present and describe a portion of the building in its existing state as " being fire-proof." This is not a matter of opinion, for it defines a state or condition, and if part of that portion was of wood, may properly be regarded as a " false statement of a fact." Whether the defendant knew the component parts of his own buildings, and if so, whether the statement was made with intent to deceive, and whether it was an inducement to the contract, the learned counsel for the respondent has fully argued. At present it is unnecessary to discuss those questions, for it seems to us they are, as the case stands, properly for the jury, and upon the only point which appears to have been considered by the court below we are obliged to differ from them.

That the issues may be more fully tried, the judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except ANDREWS and MILLER, JJ., not voting, and EARL, J., dissenting

Judgment reversed.